IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CHARLES REINHARDT,

    Plaintiff,

v.

RAVEN INDUSTRIES, INC.,
JASON M. ANDRINGA,
THOMAS S. EVERIST,
JANET M. HOLLOWAY,
KEVIN T. KIRBY,
MARC E. LEBARON,
LOIS M. MARTIN,
RICHARD W. PAROD, and
DANIEL A. RYKHUS,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Charles Reinhardt ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Raven Industries, Inc. ("Raven" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

1

transaction, pursuant to which the Company will be acquired by CNH Industrial N.V. ("CNH") through CNH's subsidiary CNH Industrial South Dakota, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On June 21, 2021, CNH and Raven issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated June 20, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Raven stockholder will be entitled to receive $58.00 in cash for each Raven share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.1 billion.

3. On August 6, 2021, Raven filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Raven stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Raven's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("JPM"); and (ii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Raven's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Raven maintains and operates Engineered Films Division facilities in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Raven common stock.

9. Defendant Raven is a South Dakota corporation with its principal executive offices located at 205 East 6th Street, P.O. Box 5107, Sioux Falls, South Dakota 57117.  Raven provides innovative, high-value products and systems throughout the world.  The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "RAVN."

10. Defendant Jason M. Andringa ("Andringa") has been a director of the Company since 2013.

11. Defendant Thomas S. Everist ("Everist") has been a director of the Company since 1996.

12. Defendant Janet M. Holloway ("Holloway") has been a director of the Company since 2018.

13. Defendant Kevin T. Kirby ("Kirby") has been a director of the Company since 2007.

14. Defendant Marc E. LeBaron ("LeBaron") has been Chairman of the Board since May 2017, and a director of the Company since 2011.

15. Defendant Lois M. Martin ("Martin") has been a director of the Company since 2018.

16. Defendant Richard W. Parod ("Parod") has been a director of the Company since 2017.

17. Defendant Daniel A. Rykhus ("Rykhus") has been President and Chief Executive Officer ("CEO") of the Company since 2010, and a director since 2008. Defendant Rykhus previously served as the Company's Executive Vice President ("EVP") from 2004 to 2010.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. CNH is a Netherlands corporation with its principal executive offices located at 25 St. James's Street, London, SW1A 1HA, United Kingdom. CNH is a global leader in the capital goods sector with established industrial experience, a wide range of products, and a worldwide presence. Each of the individual brands belonging to CNH is a major international force in its specific industrial sector: Case IH, New Holland Agriculture and Steyr for tractors and agricultural

4

machinery; Case and New Holland Construction for earth moving equipment; Iveco for commercial vehicles; Iveco Bus and Heuliez Bus for buses and coaches; Iveco Astra for quarry and construction vehicles; Magirus for firefighting vehicles; Iveco Defence Vehicles for defense and civil protection; and FPT Industrial for engines and transmissions.  CNH is engaged in the design, production, marketing, sale, and financing of agricultural and construction equipment, trucks, commercial vehicles, buses and specialty vehicles for firefighting, defense and other uses, as well as engines, transmissions and axles for those vehicles and engines for marine and power generation applications.  CNH has industrial and financial services companies located in 44 countries and a commercial presence in approximately 180 countries.  CNH shares trade on the New York Stock Exchange under the ticker symbol "CNHI."

20. Merger Sub is a South Dakota corporation and wholly owned subsidiary of CNH.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

21. Raven is a diversified technology company providing a variety of products to customers within the industrial, agricultural, geomembrane, construction, commercial lighter-than-air, and aerospace and defense markets.  The Company markets its products around the world and has its principal operations in the United States of America.  Raven began operations as a manufacturer of high-altitude research balloons before diversifying into product lines that extended from technologies and production methods of this original balloon business.  The Company employs 1,363 permanent and temporary employees.

22. The Company has three unique operating units, or divisions, that are also its reportable business segments: Applied Technology Division ("Applied Technology"), Engineered Films Division ("Engineered Films"), and Aerostar Division ("Aerostar").  Applied Technology designs, manufactures, sells, and services innovative precision agriculture products and

5

information management tools that focus on machine automation to help farmers reduce costs, more precisely control inputs, and improve farm yields for the global agriculture market. Engineered Films produces high-performance plastic films and sheeting for geomembrane, agricultural, construction, and industrial applications and also offers design-build and installation services of these plastic films and sheeting.  Aerostar serves the aerospace and defense and commercial lighter-than-air markets, and its core products include high-altitude stratospheric platforms, technical services, and radar systems.

23. On May 17, 2021, the Company announced its first quarter fiscal 2022 financial results and business highlights.  Consolidated net sales were $112.5 million, an increase of 30% versus the prior year quarter.  Consolidated operating income for the first quarter of fiscal 2022 was $11.6 million, versus operating income of $3.9 million in the first quarter of fiscal 2021.  Net income for the first quarter of fiscal 2022 was $9.6 million, or $0.26 per diluted share, compared to $4.0 million, or $0.11 per diluted share, for the first quarter of 2021.  Applied Technology generated record quarterly revenue of $54.9 million, an increase of 30.6% versus the prior year, driven by significant growth in both the original equipment manufacturer and aftermarket channels.  Engineered Films' net sales increased 46% versus the prior year as the division's end-markets continued their recovery from the global pandemic, leading to year-over-year growth across all end-markets.  Reflecting on the Company's results and looking ahead to the future, defendant Rykhus stated:

> We are off to a tremendous start in fiscal 2022, breaking our previous quarterly record for revenue in Applied Technology, while also making significant progress on our strategic platforms for growth.  The strong demand we continue to see in our businesses, particularly in Applied Technology and Engineered Films, provides us even greater confidence in our ability to exceed our previous annual revenue record in the current year.

I am very proud of our team in Applied Technology as we overcame substantial supply chain constraints experienced across the world to generate record revenue for the quarter. The momentum and demand in the market continues to grow for our ag technology solutions. Order activity remained very strong in the first quarter and backlog is at an all-time high. In Raven Autonomy™, we are right on track with our commercialization goals in the current year as we continue to set the foundation for a step-change in long-term growth for the division. The solutions we are developing are significant advancements in ag technology that will help solve labor shortages, provide greater efficiencies and enhance sustainability in agriculture across the world.

In Engineered Films, we generated substantial year-over-year growth as our end-markets continued their recovery from the global pandemic in the first quarter of the year. Rising prices and volatility in the resin market presented challenges. However, our offering of highly engineered, high-value films provides flexibility to be able to mitigate rising input costs and maintain our strong profitability within the division. For the full year in fiscal 2022, we expect to drive significant volume and revenue growth over fiscal 2021 and also exceed pre-pandemic sales levels achieved in fiscal 2020. These expectations for the current year are in line with plans developed two years ago as we return to normalized conditions while executing on our strategy of delivering thinner, lighter and stronger materials.

In Aerostar, we continued to advance the technology for our stratospheric and radar solutions in the first quarter, while improving profitability year-over-year and sequentially. The momentum around utilizing our technology in defense applications continues to grow, and our team is working to advance our solution down the pathway of becoming a program of record. Over the remainder of the year, we have a significant number of flight campaigns scheduled with multiple Department of Defense agencies as we continue to showcase the industry-leading capabilities for our stratospheric balloon systems.

Fiscal 2022 will be an exceptional year for our Company. We are experiencing high commodity prices in agriculture and a broad economic recovery in construction, industrial, energy and the other end-markets we serve. Our Company is well-positioned to drive record revenue and substantial earnings growth. While we expect global supply chain constraints to persist throughout the year, I am confident in our team's ability to continue to manage these challenges. While executing on the near-term opportunities, we will continue to invest in our strategic platforms that will drive substantial growth for our Company in the coming years.

**The Proposed Transaction**

24.     On June 21, 2021, Raven and CNH issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

LONDON & SIOUX FALLS, S.D. (June 21, 2021) — CNH Industrial N.V. (NYSE: CNHI / MI: CNHI) today announced that it has entered into an agreement to acquire 100% of the capital stock of Raven Industries, Inc. (NASDAQ: RAVN), a US-based leader in precision agriculture technology for US$58 per share, representing a 33.6% premium to the Raven Industries 4-week volume-weighted average stock price, and US$2.1 billion Enterprise Value. The transaction will be funded with available cash on hand of CNH Industrial. Closing is expected to occur in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including approval of Raven shareholders and receipt of regulatory approvals.

The acquisition builds upon a long partnership between the two companies and will further enhance CNH Industrial's position in the global agriculture equipment market by adding strong innovation capabilities in autonomous and precision agriculture technology.

"Precision agriculture and autonomy are critical components of our strategy to help our agricultural customers reach the next level of productivity and to unlock the true potential of their operations," said Scott Wine, Chief Executive Officer, CNH Industrial. "Raven has been a pioneer in precision agriculture for decades, and their deep product experience, customer driven software expertise and engineering acumen offer a significant boost to our capabilities. This acquisition emphasizes our commitment to enhance our precision farming portfolio and aligns with our digital transformation strategy. The combination of Raven's technologies and CNH Industrial's strong current and new product portfolio will provide our customers with novel, connected technologies, allowing them to be more productive and efficient."

"Our Board and Management are excited about this partnership and what it means for our future," said Dan Rykhus, President & Chief Executive Officer for Raven Industries. "For 65 years, our company has been committed to solving great challenges. Part of that commitment includes delivering groundbreaking innovation by developing and investing in our core capabilities and technology. By coming together with CNH Industrial, we believe we will further accelerate that path as well as bring tremendous opportunities and value to our customers — once again fulfilling our purpose to solve great challenges. Our relationship with CNH Industrial has expanded over decades, and we have a deep respect for one another and a shared commitment to transform agriculture practices across the world. We look forward to CNH Industrial leveraging the Raven talent and culture, as well as the Sioux Falls community, as part of their vision and future success."

"Raven Industries' capabilities, innovation culture, entrepreneurial spirit and engineering talent are impressive and will continue to thrive as part of the CNH Industrial family. Sioux Falls is and will continue to be a true center of excellence," added Wine. "We are incredibly excited to collaborate in bringing our customers more integrated precision and autonomous solutions, not only to improve

productivity and profitability, but also promote more sustainable solutions and environmental stewardship.  Together, our teams will create a stronger business for our employees, dealer network, and customers, enabling us to shape the future of agriculture, augment our world-leading sustainability credentials, and maximize our growth opportunities."

Headquartered in Sioux Falls, South Dakota, Raven Industries is organized into three business divisions: Applied Technology (precision agriculture), Engineered Films (high-performance specialty films) and Aerostar (aerospace) with consolidated net sales of US$ 348.4 million for the twelve months ended January 31, 2021.  The company is a global technology partner for key strategic OEMs, agriculture retailers and dealers.  The transaction is expected to generate approximately US$400 million of run-rate revenue synergies by calendar year 2025, resulting in US$150 million of incremental EBITDA.

The Engineered Films and Aerostar segments are industry leaders in the high performance specialty films and stratospheric platform industries, respectively, and CNH Industrial believes they represent attractive independent businesses with excellent near and long-term potential.  Accordingly, CNH Industrial plans to undertake a strategic review of each business to best position them for future success and maximize shareholder value.

CNH Industrial does not expect the proposed acquisition will have any impact on its guidance for 2021.  The acquisition is expected to be funded with Group consolidated cash1 not affecting third party debt of industrial activities.  Cash consideration for the transaction is not included in the free cash flow definition, and consequently it will not affect its free cash flow guidance for the FY 2021E.

Barclays and Goldman Sachs acted as financial advisors to CNH Industrial and Sullivan & Cromwell LLP as its legal advisor.  J.P. Morgan Securities LLC acted as financial advisor to Raven and Davis Polk & Wardwell LLP as its legal advisor.

**Insiders' Interests in the Proposed Transaction**

25. Raven insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Raven.

26. Notably, in connection with entering into the Merger Agreement, Raven has approved the adoption of a retention program under which Raven may pay cash-based retention bonuses (the "Retention Bonuses") to up to 183 employees of Raven in an aggregate amount of

up to $10.3 million (the "Retention Program"). Retention Bonuses under the Retention Program will include potential payments of $1,230,000 to defendant Rykhus, $390,000 to Mr. Taimur Sharih, $597,000 to Mr. Steven Brazones, $180,000 to Mr. Anthony Schmidt, $345,000 to Mr. Scott Wickersham, $338,000 to Mr. Lee Magnuson, and $382,500 to Ms. Nicole Freesemann.

27.    Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with CNH. Pursuant to the Merger Agreement, all outstanding Company options, Restricted Stock Units ("RSUs"), and Deferred Stock Units ("DSUs"), will vest and convert into the right to receive the Merger Consideration. The following table summarizes the value of equity awards held by the Company's non-employee directors:

| Non-Employee Directors | Number of Deferred Stock Units (#) | Value of Deferred Stock Units ($) |
|---|---|---|
| Jason M. Andringa | 36,846 | 2,137,068 |
| Thomas S. Everist | 33,817 | 1,961,386 |
| Janet M. Holloway | 9,962 | 577,796 |
| Kevin T. Kirby | 32,093 | 1,861,394 |
| Marc E. LeBaron | 34,903 | 2,024,374 |
| Lois M. Martin | 9,962 | 577,796 |
| Richard W. Parod | 10,287 | 596,646 |

The following tables summarize the value of equity awards held by the Company's named executive officers:

| Named Executive Officers | Value of Unvested Stock Options ($) | Value of RSUs ($) | Total ($) |
|---|---|---|---|
| Daniel A. Rykhus | 149,519 | 11,200,728 | 11,350,247 |
| Taimur Sharih | - | 810,086 | 810,086 |
| Steven E. Brazones | 45,212 | 3,627,900 | 3,673,112 |
| Anthony D. Schmidt | 36,491 | 1,408,356 | 1,444,847 |
| Scott W. Wickersham | 29,192 | 1,492,108 | 1,521,300 |
| Lee A. Magnuson, | 11,636 | 540,560 | 552,196 |
| Brian E. Meyer | - | 176,088 | 176,088 |

28. Further, if they are terminated in connection with the Proposed Transaction, Raven's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | Cash ($)(1) | Equity ($)(2) | COBRA Continuation Coverage ($)(3)(7) | Other Continued Insurance Coverage ($) (4)(5)(7) | Maximum Supplemental Health Benefits ($) (4)(6)(7) | Maximum Tax Reimbursement on Benefits ($) (4)(6)(7) | Total Benefits ($) |
|---|---|---|---|---|---|---|---|
| Daniel A. Rykhus, President and Chief Executive Officer | 6,970,000 | 11,350,247 | 24,176 | - | - | - | 18,344,423 |
| Taimur Sharih, Chief Financial Officer | 1,930,500 | 810,086 | 14,780 | - | - | - | 2,755,366 |
| Steven E. Brazones, Division Vice President and General Manager – Applied Technology (Former Chief Financial Officer) | 2,169,100 | 3,673,112 | 24,176 | - | - | - | 5,866,388 |
| Anthony D. Schmidt, Executive Director of Information Technology and Facilities (Former Division Vice President and General Manager – Engineered Films) | 780,000 | 1,444,847 | 24,176 | 214,414 | 204,050 | 121,648 | 2,789,135 |
| Scott W. Wickersham, Division Vice President and General Manager – Engineered Films (Former Division Vice President and General Manager – Aerostar) | 1,423,125 | 1,521,300 | 24,176 | - | - | - | 2,968,601 |
| Lee A. Magnuson, General Counsel and Vice President | 1,183,000 | 552,196 | 14,780 | - | - | - | 1,749,976 |
| Brian E. Meyer, Former Division Vice President and General Manager – Applied Technology | - | 176,088 | - | - | - | - | 176,088 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Raven's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Raven's financial projections and the data and inputs underlying the financial

11

valuation analyses that support the fairness opinion provided by the Company's financial advisor JPM; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Raven's Financial Projections and JPM's Financial Analyses***

31.     The Proxy Statement omits material information regarding the Company's financial projections.

32.     For example, the Proxy Statement fails to disclose the Company's unlevered free cash flows for fiscal years ending 2021 through January 31, 2031, utilized by JPM for its *Discounted Cash Flow Analysis*.

33.     Additionally, with respect to the Company's projections, the Proxy Statement fails to disclose the line items underlying the Company's: (i) EBITDA; and (ii) unlevered free cash flows.

34.     The Proxy Statement also describes JPM's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of JPM's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Raven's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on JPM's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

35.     With respect to JPM's *Public Trading Multiples Analysis* and *Public Trading Multiples Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by JPM.

36.     With respect to JPM's *Discounted Cash Flow Analysis* excluding Raven's Autonomy business, the Proxy Statement fails to disclose: (i) Raven's estimated unlevered free cash flows for the projection period from April 30, 2021 through January 31, 2031; (ii) quantification of the inputs and assumptions underlying the discount rate range of 9.25% to

10.25%; (iii) quantification of the financial metric that multiples were applied to in order to derive the terminal values for the analysis; (iv) quantification of the Company's terminal values; (v) Raven's estimated net debt as of April 30, 2021; and (vi) the Company's fully diluted shares outstanding.

37.     With respect to JPM's *Discounted Cash Flow Analysis* for Raven's Autonomy business, the Proxy Statement fails to disclose: (i) the unlevered free cash flows that Raven's Autonomy business is expected to generate from April 30, 2021 through January 31, 2031; (ii) quantification of the inputs and assumptions underlying the discount rate range of 16.00% to 17.00%; (iii) quantification of the financial metric that multiples were applied to in order to derive the terminal values for the analysis; and (iv) quantification of the terminal values.

38.     With respect to JPM's *Discounted Cash Flow Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose: (i) the discount rates utilized in the analysis; (ii) quantification of the financial metric that multiples were applied to in order to derive the terminal values for the analysis; (iii) quantification of the terminal values; and (iv) the Company's fully diluted shares outstanding.

39.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     The omission of this information renders the statements in the "Projected Financial Information" and "Opinions Raven's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

13

42. For example, the Proxy Statement fails to disclose whether the standstill provisions in the confidentiality agreements the Company entered into with six parties are "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding these parties from submitting a topping bid for the Company.

43. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

44. Any reasonable Raven stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

45. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Raven will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

47.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Raven's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, JPM, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Raven within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Raven and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Raven's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 27, 2021                    Respectfully submitted,

                                          /s/ Richard A. Acocelli
                                          Richard A. Acocelli
                                          **WEISSLAW LLP**
                                          1500 Broadway, 16th Floor
                                          New York, NY 10036
                                          Telephone: (212) 682-3025
                                          Facsimile: (212) 682-3010
                                          Email: racocelli@weisslawllp.com

                                          *Attorneys for Plaintiff*